IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROUTES 202 AND 309 AND NOVELTIES GIFTS, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-5822 |
| | : | |
| THE KINGS MEN et al, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## MEMORANDUM OPINION

Tucker, C. J.                                                    March 6, 2014

Presently before the Court is Plaintiff's Motion for Leave to File an Answer to

Defendants' Counterclaim (Dk. at 75) and Defendants' Response in Opposition thereto (Dk. at

78).  Additionally, the Court considers cross-motions for summary judgment: Plaintiff's Motion

for Summary Judgment on Defendants' Counterclaim (Dk. at 53), Defendants' Motion for

Summary Judgment (Dk. at 52), and all relevant responses.  Upon consideration of the parties'

motions with briefs and exhibits, and for the reasons set forth below, Plaintiff's Motion for

Leave to File an Answer and both motions for summary judgment will be denied.

## I.        FACTUAL BACKGROUND[1]

Because the Court writes primarily for the parties, the Court discusses only those facts

necessary to its decision.  Routes 202 and 309 Novelties and Gifts, Inc. ("Plaintiff" or "Adult

World"), a Pennsylvania limited liability company, brings this suit against Defendants The Kings

Men ("TKM"), a Pennsylvania non-profit corporation; Mark Houck, the President of TKM;

---

[1] Neither the Plaintiff nor the Defendants has included a Statement of Facts in their respective motions for summary
judgment.  The following facts are taken from the Complaint.

Damian Wargo, Director of Operations of TKM; David Dinuzzo, Sr., Director of Programming of TKM; Desarae McConnell, an alleged participant in an August 3, 2011 protest; Robert Lechter, an alleged participant in an August 3, 2011 protest; Charles John Harvey, an alleged participant in an August 3, 2011 protest; Philip Greco, an alleged participant in an August 3, 2011 protest; John A. McGann, III, an alleged participant in an August 3, 2011 protest; and John Does 1-100, alleged participants in an September 14, 2011 protest (collectively, "Defendants") (Compl. ¶¶ 1-11.)

Plaintiff operates an adult based business under the trade name "Adult World." TKM is a Catholic fraternal organization that advertises its goals as developing men to be "leaders, protectors, and providers." TKM also posts on its website that it engages in "noble battles," including, but not limited to, the eradication of pornography. To this end, TKM promotes its "No More Porn Tour," which provides dates of scheduled protests on and around the property of adult entertainment businesses. TKM believes that sexually explicit material is a contributing factor to the moral decline of the family, and is the root cause of adultery, fornication, rape, incest, the contraceptive mentality, divorce, and abortion. (Compl. ¶¶ 17-28.) TKM is controlled by directors and officers Houck, Wargo, and DiNuzzo. The organization advertises that it has organized hundreds of protests across the United States, costing the adult entertainment industry thousands per protest, and causing the closings of several adult businesses. (Compl. ¶¶ 29-38.)

On August 3, 2011, on or about 4:00 p.m., Defendants appeared on and around the side of the real property of Adult World to protest. At this point, Plaintiff's manager instructed Defendants that they were not welcome on the business property; however, Defendants refused to leave and continued their attempts to interfere with Plaintiff's business. Plaintiff called the

Montgomery Township Police, who in response forced the protestors to retreat to the mulched area in front of Plaintiff's business, as there existed an easement.  Defendants obeyed the police officer's orders, and moved their protest to the mulched area on Upper State Road.  Defendants passed out literature to passing motorists, allegedly causing a slowdown of traffic and abrupt stops by motorists to avoid collisions.  Defendants also buried medals in the ground in what appeared to be a religious ceremony, all without permission from Plaintiff.  Additionally, during the protest, a leader of TKM spoke with the news media, stating that illegal acts were being taken on the premises of Adult World.  TKM advertised that its next protest at Adult World would take place on September 7, 2011.  (Compl. ¶¶ 53-72.)

On September 14, 2011, on or about 4:00 p.m., Defendants protested at Adult World again.  Defendants used placards, which allegedly obstructed the safe ingress and egress of Plaintiff's employees, customers and business invitees.  Upon Plaintiff's call to the Montgomery Township Police, Defendants were instructed to cease obstructing the paths of ingress and egress to Plaintiff's property.  After the police departed, Defendants proceeded to place their placards into traffic on Upper State Road, impeding the free flow of traffic, and causing vehicles to swerve to avoid collisions.  Once again, Plaintiffs contacted the Montgomery Township Police, who instructed Defendants to halt their actions.  (Compl. ¶¶ 74-81.)

Plaintiff now asserts the following claims and requests for relief: (1) trespass; (2) public nuisance; (3) private nuisance; (4) violation/suppression of free speech; (5) violation of the Sherman Act; (6) violation of Racketeer Influenced and Corrupt Organization Act/Hobbs Act; (7) equitable relief; and (8) punitive damages.  Plaintiff seeks the following relief: (1) a permanent injunction prohibiting Defendants from soliciting, organizing, conducting, and participating in protest activity at the Plaintiff's business location; (2) declaration that

3

Defendants' conduct is illegal; (3) compensatory damages; (4) punitive damages; (5) triple damages as allowed under the trespass statute; (6) reasonable counsel fees; and (7) all other relief deemed appropriate by the Court.

Defendants have filed a counterclaim against Plaintiff, pursuant to 42 U.S.C. § 1985, for alleged violations of their rights to freedom of speech and freedom of assembly.  Defendants seek: (1) a declaratory judgment in their favor; (2) a permanent injunction enjoining Plaintiff from filing lawsuits against Defendants; (3) costs of litigation; and (4) such other relief as this Court deems necessary and proper.

## II.      DISCUSSION

### A.      Plaintiff's Motion for Leave to File an Answer to Defendants' Counterclaim is Denied

Before resolving any issues raised by the parties' cross motions for summary judgment, the Court first addresses Plaintiff's outstanding motion requesting leave of court to file an answer to Defendants' Counterclaim.  (Dk. at 75.)  For the reasons stated herein the Court will deny Plaintiff's motion.

On September 4, 2012, Defendants filed their answer to Plaintiff's Complaint and asserted a counterclaim against Plaintiff.  (Dk. at 34.)  On October 15, 2012, Plaintiff moved to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dk. at 38.)  This Court denied Plaintiff's motion to dismiss the counterclaim on November 20, 2012.  (Dk. at 45.)  Consistent with Fed. R. Civ. P. 12(a)(4)(A), Plaintiff had 14 days, or until December 4, 2012, to file an answer to Defendants' counterclaim.  Plaintiff never attempted to answer Defendants' counterclaim until, at the earliest, June 26, 2013, almost eight months after the answer was due.

(Dk. at 56.)[2]  On August 2, 2013, Plaintiff filed a motion seeking leave of court to file its answer to Defendants' counterclaim.  (Dk. at 75.)  Defendants opposed Plaintiff's request.  (Dk. at 78.)

The issue before this Court is whether to grant Plaintiff leave to file its answer to Defendants' counterclaim despite being beyond the December 4, 2012 deadline set by Fed. R. Civ. P. 12(a)(4)(A).  Extensions of time are governed by Fed. R. Civ. P. 6(b).  Under Rule 6(b), the court must utilize its discretion to determine whether good cause exists to extend a deadline.  Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010).  Where a party has failed to act within the period of time set by the rules, that party must file a formal motion asking the court for an extension of time.  Fed. R. Civ. P. 6(b)(1)(B); Drippe, 604 F.3d at 785.  For motions filed under Rule 6(b)(1)(B), good cause exists if the delay was caused by excusable neglect.  Id.

In determining if a party's neglect is "excusable," a court considers "all relevant circumstances surrounding the party's" failure to timely file its pleading.  Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 395 (1993).  The inquiry is, at its core, guided by equitable principles.  Id.  Notwithstanding this overarching goal, both the Supreme Court and the Third Circuit have enumerated four factors[3] that are informative to this inquiry: (1) the danger of material prejudice in allowing the late filing; (2) length of the delay; (3) the reason for the delay; and (4) whether the party requesting an extension of time has acted in good faith.  Id.; In re

---

2    Plaintiff's initial attempt to file an answer to Defendants' counterclaim (Dk. at 56) was stricken by the Court's July 31, 2013 Order (Dk. at 73) granting Defendants' Motion to Strike the answer.  (Dk. at 62.)  Plaintiff's initial filing failed to comply with the requirements of Fed. R. Civ. P. 6(b)(1)(B) and the Court struck the answer for this reason.  See, Drippe, 604 F.3d at 785.

3    Though the Pioneer factors have become the standard "baseline" factors courts must consider in this inquiry, they are by no means exhaustive or necessarily determinative.  Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 326 (3d Cir. 2012).   In determining whether good cause exists, the focus is always on the overall picture confronting the court.  Id. at 326-327.  The Third Circuit has endorsed a more flexible approach to making this determination including, where relevant, the consideration of additional factors outside of the four primary Pioneer factors.  Id. at 327 (noting the Circuit's continued approval of factors considered in Consolidated Freightways Corp. of Del. v. Larson, 827 F.2d 916 (1987) and Dominic v. Hess Oil V.I. Corp., 841 F.2d 513 (3d Cir.1988)).

O'Brien Envtl. Energy, Inc., 188 F.3d 116, 126-130 (3d Cir.1999).  Addressing each of these factors in turn, the Court ultimately finds that under all circumstances Plaintiff has failed to demonstrate excusable neglect.

### 1.    The Danger of Material Prejudice

As to the first Pioneer factor, the Court finds no evidence to support a finding of prejudice if Plaintiff is permitted to file its untimely motion.   "Prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." In re O'Brien Envtl. Energy, Inc., 188 F.3d at 127.  To demonstrate prejudice, a party "must assert loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment."  Id. (quoting Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir.1982)) (internal punctuation omitted).  The loss of an advantageous litigation position is not the type of prejudice considered relevant to a court's inquiry.  Id. (citing Pratt v. Philbrook, 109 F.3d 18, 22 (1st Cir.1997)).

Here, Defendants cite their "significant" reliance on Plaintiff's failure to answer the counterclaim as evidence of prejudice.  (Defs.' Opp'n to Pl.'s Mot. for Leave to File Answer 3.) Specifically, Defendants claim they would be prejudiced because they "conducted discovery without any knowledge of what Plaintiff would claim in their answer, and Defendants relied on Plaintiff's failure to answer in their summary judgment pleadings." (Id.)  Though this is undoubtedly a true statement, it omits pertinent facts relevant to a finding of prejudice, most notably Defendants' acquiescence to this course of action.

After Plaintiff failed to file an answer to Defendants' counterclaim, Defendants remained silent on the matter. Defendants never requested that the Clerk of Court enter a default against Plaintiff under Fed. R. Civ. P. 55(a).  Defendants also failed to alert the Court to Plaintiff's

6

failure to answer in its opposition to Plaintiff's request to extend discovery in this matter.  (Dk. at 47.)  For months, Defendants remained entirely mute on the subject of Plaintiff's failure to answer, only bringing it to the Court's attention in their Response in Opposition to Plaintiff's Motion for Summary Judgment.[4]

Defendants' silence in this matter leads the Court to conclude that Defendants believed Plaintiff's failure to answer to be nothing more than a fortuitous advantage it could wield in its favor throughout the remainder of the litigation.  See In re O'Brien Envtl. Energy, Inc., 188 F.3d at 130 ("the detrimental impact of this delay is as much due to O'Brien's strategic decision to not object to or litigate Manus's claim until the fairly tight time frame between confirmation and the effective date of the Plan."); see also Chase Bank USA, N.A. v. Hess, 2013 WL 867542 at *7-8 (D. Del. Mar. 7, 2013) report and recommendation adopted, 2013 WL 5314706 (D. Del. Sept. 20, 2013) (finding a plaintiff's 15 month silence as to the lack of an answer to its complaint demonstrated that the defendant's failure to file an answer was not problematic to plaintiff's ability to effectively litigate the case.).  While Defendants' litigation strategy may ultimately help it to prevail in this matter, the Court will not permit the Defendants to claim prejudice while simultaneously using Plaintiff's failure to answer the counterclaim as an arrow in its summary judgment quiver.  Because allowing the Plaintiff to answer Defendants' counterclaim would only prejudice Defendants insomuch as it would cause them to lose an advantageous position in this litigation, this factor weighs in favor of allowing the untimely filing.  See In re O'Brien Envtl. Energy, Inc., 188 F.3d at 127.

---

[4]   Even in Defendants' Motion for Summary Judgment, Defendants did not alert the Court or Plaintiff to the lack of an answer to the counterclaim.  Defendants' Motion for Summary Judgment only alleged that Defendants had "prevailed" in their counterclaim and directed the Court to the text of the counterclaim, Defendants' Requests for Admissions to Plaintiff, and Fed. R. Civ. P. 36.  (Defs.' Mot. Summ. J. ¶ 13.)  Defendants' Motion for Summary Judgment did not reference Plaintiff's failure to answer the counterclaim.  To the contrary, Defendants' citation to Rule 36 would seem to be a contrived assertion that Plaintiff had failed to answer Defendants' Requests for Admissions, *not* the counterclaim.  See Fed. R. Civ. P. 36(a)(3).

### 2. __Good Faith__

The good-faith factor also weighs in favor of a finding of excusable neglect. The Court finds no evidence of record that Plaintiff acted in bad faith in failing to file an answer to the counterclaim.  Plaintiff originally filed its motion to dismiss Defendants' counterclaim in a timely fashion.  (Dk. at 38.)  Plaintiff also filed a timely motion for partial summary judgment as to Defendants' counterclaim.  (Dk. at 53.)  When Defendants finally alerted this Court and Plaintiff as to the absence of an answer, Plaintiff promptly attempted to file its answer, albeit improperly.  (Dk. at 56.)  These facts demonstrate the good faith of Plaintiff.  Plaintiff may have been inattentive to the docket, but there is no evidence that Plaintiff's failure to file an answer was in bad faith.

### 3. __Length of Delay__

In assessing the extent of delay, "the length of the delay should be considered in absolute terms and not by reference to the import of intervening circumstances."  In re Orthopedic Bone Screw Products Liab. Litig., 246 F.3d 315, 325 (3d Cir. 2001) (citing In re O'Brien Envtl. Energy, Inc., 188 F.3d at 130).  As such, the effect of the delay is judged by comparing when the answer should have been filed and the date Plaintiff first attempted to file its answer.  See In re O'Brien Envtl. Energy, Inc., 188 F.3d at 130.  Though a six- to eight-month delay has been found to constitute excusable neglect in some situations,[5] the delay should be measured in light of the circumstances confronting the litigants at the time of the delay as well as in absolute terms.  Id.; In re Orthopedic Bone Screw Products Liab. Litig., 246 F.3d at 325 (the relevant inquiry focuses

---

[5]    See In re Eagle Bus Mfg., Inc., 62 F.3d 730, 740 (5th Cir. 1995) (cited with approval in In re O'Brien Envtl. Energy, Inc., 188 F.3d at 130); Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir.1995) (delay of two years could be excusable); but see Nara v. Frank, 488 F.3d 187, 194 (3d Cir. 2007) (delay of 17 days inexcusable given "urgency" of the situation); In re Kmart Corp., 381 F.3d 709, 714-715 (7th Cir.2004),  denied sub nom. Simmons v. Kmart Corp., 543 F.3d 1056 (2005) (delay of one day did not weigh in favor of excusable neglect).

on how a litigant's "failure to comply with [a particular] deadline will deter the expedient and just resolution of claims.").

Here, Plaintiff's eight-month delay in filing its answer to the counterclaim encompassed the entirety of the discovery period prescribed by this Court's order of November 19, 2012 (Dk. at 44.)  The <u>initial</u> filing of an answer <u>after</u> the close of discovery would require any court to reopen the discovery period and permit both parties additional discovery on the issues raised therein.  See <u>Morgan v. Gandalf, Ltd., 165 F. App'x 425, 430 (6th Cir. 2006)</u> (answer filed after close of discovery "adversely impacted the orderly progress of the case" and "weigh[ed] against allowing the late filing of the answer," but prejudice to the litigants exists where a court refuses to reopen discovery to permit consideration of any issues raised in answer).  Because the answer was filed after the close of discovery, the length of the delay weighs against a finding of excusable neglect.

### 4.    <u>Reason for Delay</u>

In analyzing the more general concept of "reason for delay," courts in this Circuit weigh several targeted sub-factors, including:

> (1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure, (2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, (3) counsel's failure to provide for a readily foreseeable consequence, (4) a complete lack of diligence, or (5) whether the inadvertence resulted despite counsel's substantial good faith efforts towards compliance.

<u>Dominic v. Hess Oil V.I. Corp.</u>, 841 F.2d 513, 517 (3d Cir. 1988); <u>see</u> <u>also</u> <u>Ragguette v. Premier Wines & Spirits</u>, 691 F.3d 315, 327 (3d Cir. 2012); <u>In re Cendant Corp. Prides Litig.</u>, 233 F.3d 188, 196 n. 8 (3d Cir.2000) (hereinafter, "<u>Cendant Prides I</u>").  In analyzing each of these factors, the Court finds that the facts presented to the Court all weigh against Plaintiff.

9

Plaintiff's stated reasons for its significant delay, the loss of an attorney, weigh heavily against a finding of excusable neglect.  Initially, the Court notes that "[i]t is well established that a busy caseload generally does not constitute a basis for a finding of excusable neglect." Ragguette, 691 F.3d at 330 (citing Pedereaux v. Doe, 767 F.2d 50, 52 (3d Cir. 1985)).  Applying the Dominic factors to Plaintiff's stated reasons for the delay reveals a wealth of neglect on the part of the Plaintiff, but no excuse for this negligence.

Plaintiff's attorney first claims that the failure to file an answer to the counterclaim was due to the loss of a key associate that "left a large void at [his] firm…" (Pl.'s Mot. for Leave to File Answer at Ex. C, "Certif. of Brian J. Smith" at ¶¶ 4-5.)  However, a reasonably competent attorney is responsible for managing his or her own caseload, including ensuring proper filings, regardless of how busy the attorney might be.  Ragguette 691 F.3d at 330.  A reasonably competent attorney also has a responsibility to oversee and supervise his or her employees.  Id. at 328.  The failure to account for the loss of an associate, no matter how valuable, is a failure to prepare for a readily foreseeable consequence. Dominic, 841 F.2d at 517. Additionally, the Court finds noteworthy that Plaintiff's counsel "essentially and rather conveniently sought to shift at least some of the blame from [himself] to another person who actually was no longer with the firm [at] the time of the [current motion], [and] did not submit any declaration in support of the motion." Ragguette, 691 F.3d at 328 (internal punctuation omitted).  As such, application of the Dominic factors to Plaintiff's first proffered reason for the delay weighs against a finding of excusable neglect.

Plaintiff's attorney has also claimed that he believed the associate had prepared and filed an answer to the counterclaim prior to leaving the firm.  (Certif. of Brian J. Smith at ¶ 5.)  This excuse also fails to tip the scales in Plaintiff's favor.  An attorney is required to monitor the

court's docket, and the failure to review the docket will not serve as a sufficient excuse for a delay.  Tobia v. Bally Total Fitness Holding Corp., 2013 WL 638290 at *4 (E.D. Pa. Feb. 21, 2013) (citing Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004)); see also Norgaard v. DePuy Orthopaedics, Inc., 121 F.3d 1074, 1075 (7th Cir.1997) (ignorance of a court's docket "although 'neglect,' is not 'excusable' — it is nothing but negligence, which does not justify untimely action.").

In sum, only two of the four Pioneer factors weigh in favor of denying Plaintiff's motion seeking leave to file an answer.  However, though the Court considers all four Pioneer factors, the Court notes the relative gravity of the "reason for delay" factor given how overwhelmingly it weighs in Defendants' favor.  See In re Kaplan, 482 F. App'x 704, 707 (3d Cir. 2012) (Though a court is required to consider and balance all Pioneer factors, a court may rely "primarily on the third Pioneer factor ... [where] the delay in th[e] case was entirely avoidable and within [the movant's] control.") (quoting In re Am. Classic Voyages Co., 405 F.3d 127, 133–134 (3d Cir. 2005)).  Accordingly, after balancing all the Pioneer factors, the Court finds that Plaintiff's failure to file its answer to Defendants' counterclaim was not caused by excusable neglect.

### B.   The Parties' Cross-Motions for Summary Judgment will be Denied

#### 1. Standard of Review

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56(a); see also Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008).  A factual dispute is

genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986).  Once the moving party has carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001).  The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

## 2. Plaintiff's Motion for Summary Judgment as to Defendants' Counterclaim is Denied

As discussed, Plaintiff previously failed to answer Defendants' counterclaim and this failure was not a result of excusable neglect.  Plaintiff's failure to answer the counterclaim has

caused Plaintiff to admit to all well-pled factual allegations within the counterclaim.  Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

The Court need not waste time making its determination on the merits of Plaintiff's motion; it has previously done so.  In denying Plaintiff's earlier motion to dismiss the counterclaim (Dk. at 38-39.), the Court held that the facts alleged in the counterclaim, accepted as true and construed in the light most favorable to Defendants, were sufficient to state a claim. (Dk. at 45); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Plaintiff's failure to answer the counterclaim has caused it to admit the factual allegations of the counterclaim. Fed. R. Civ. P. 8(b)(6).  As such, Plaintiff's *factual admissions* at summary judgment are identical to the facts the Court merely assumed were true for the purposes of deciding the motion to dismiss.

At summary judgment, the Court views Plaintiff's factual admissions in the light most favorable to the non-movant Defendants. Horsehead Indus., 258 F.3d 132.  Viewing Plaintiff's admissions in the light most favorable to Defendant, the Court invariably reaches an identical conclusion to the one reached in deciding the motion to dismiss: the facts of the counterclaim, now admitted by the Plaintiff, are legally sufficient such that Plaintiff is not entitled to judgment as a matter of law.  Fed R. Civ P. 56(a).

Accordingly, the Court will deny Plaintiff's motion for summary judgment.

### 3.   **Defendants' Motion for Summary Judgment as to its Counterclaim**

There remains outstanding the issue of the status of Defendants' Motion for Summary Judgment as to its Counterclaim.  Though the Court acknowledges the Plaintiff's factual

admissions, in the light most favorable to the Plaintiff (now the non-moving party), summary judgment is inappropriate.  Accordingly, Defendants' motion will be denied.

The Court begins its analysis with what has already been repeatedly stated: the Plaintiff's failure to deny the well-pled factual allegations contained within the counterclaim render those allegations admitted.  Fed. R. Civ. P. 8(b)(6).  Importantly, however, the failure to respond to the counterclaim does not admit to the conclusions of law contained therein.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir.1990) (admitting the factual allegations of the complaint, but examining the legal sufficiency of plaintiff's damages under state tort law); DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005) ("It is noted that while the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment, legal issues remain subject to its adjudication."); Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F.Supp.2d 537, 541 (E.D.Pa.2008) ("[T]he Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages."); see also City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir.2011).  Accordingly, for the purposes of summary judgment, the Court will consider as evidence only those *facts* deemed admitted by way of Plaintiff's failure to respond to the counterclaim.

Though the Plaintiff has admitted the facts of the counterclaim, the Court still views those facts through the same summary judgment lens as in all other cases.  See Russo v. Abington Mem'l Hosp. Healthcare Plan, 1998 WL 195865 at *2 (E.D. Pa. Mar. 31, 1998).  The procedural posture of the instant matter is somewhat similar to the facts confronting the court in Modrowski v. Pigatto. 712 F.3d 1166 (7th Cir. 2013).  In Modrowski, the district court denied defendants' motion to dismiss and defendants subsequently failed to file an answer to the

14

plaintiff's amended complaint. Id. at 1170.  Instead, the Modrowski defendants filed a motion

under Fed. R. Civ. P. 56 asking the district court for summary judgment, which was granted.  Id.

On appeal, the Seventh Circuit found the defendants' motion "unorthodox," but nonetheless

upheld the district court's grant of summary judgment.  Id.  In such a situation, the Seventh

Circuit held, the plaintiff *could* have "simply" pointed to the "admissions on file" contained

within his unanswered complaint as a means of "conclusively establish[ing]" genuine issues of

material fact, and thereby surviving summary judgment. Id.  However, the plaintiff had not done

so, and had instead treated the defendants' motion for summary judgment as a motion to dismiss.

Id. at 1168.  This tactical mistake proved fatal to the plaintiff's claim, as neither the district court

nor the Seventh Circuit was swayed by his arguments. Id. at 1170-71 (citing Celotex, 477 U.S. at

324).

    Here, unlike in Modrowski, Defendants *have* pointed to the "admissions on file"

contained within the unanswered counterclaim in support of their motion for summary judgment.

See Celotex, 477 U.S. at 324.  However, simply because the Defendants point to the admissions

on file does not automatically mean they are entitled to summary judgment in their favor.  Russo,

1998 WL 195865 at *2.  The *facts* deemed admitted by Plaintiff must still be sufficient to grant

Defendants judgment as a matter of law.  See Fed. R. Civ. P. 56 advisory committee's notes,

2010 Amendments ("Once the court has determined the set of facts—both those it has chosen to

consider undisputed for want of a proper response or reply and any that cannot be genuinely

disputed despite a procedurally proper response or reply—it must determine the legal

consequences of these facts and permissible inferences from them); see also Fleck v. Trustees of

Univ. of Pennsylvania, 2014 WL 460652 (E.D. Pa. Feb. 5, 2014) (same).  Thus, the Court must

consider the merits of Defendants' § 1985 claim.

Section 1985 permits a claimant to bring a claim when he is injured by two or more persons acting to deprive him "of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3); see also Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 802 (3d Cir. 2010).  To state a claim under § 1985(3), a claimant must establish four distinct elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

To adequately demonstrate a conspiracy, the facts within Defendants' counterclaim must allege, with some degree of specificity, a mutual understanding or agreement among conspirators to take unconstitutional actions against Defendants. Startzell v. City of Philadelphia, 2006 WL 1479809 (E.D. Pa. May 26, 2006) ('Startzell I').  The facts within the counterclaim must also demonstrate, with specificity, the conspirators planned to carry out the actions in furtherance of their planned unconstitutional ends.  Id.  Ultimately, to allege a conspiracy there must always be a meeting of the minds inferable from the circumstances.  Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183 (3d Cir. 2008) ('Startzell III').  As such, whether a conspiracy exists is typically a matter for the fact finder.  Startzell v. City of Philadelphia, 2007 WL 172400 (E.D. Pa. Jan. 18, 2007) ('Startzell II') aff'd sub nom. Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183 (3d Cir. 2008).

Here, in the light most favorable to Plaintiff, the facts alleged in the counterclaim fail to demonstrate a conspiracy.  The counterclaim states:

> Counter-claim [sic] Defendants [sic] have conspired with law enforcement, their attorneys and others to deprive Counterclaim Plaintiffs of their constitutional

> rights and equal protection or privileges and immunities by filing baseless
> lawsuits and calling the police which has caused economic injury to Counterclaim
> Plaintiffs and chilled them in the exercise of their first amendment rights.

(Countercl. at ¶ 39.) Beyond this conclusory assertion, there is no evidence of record on which the Court could find an agreement or understanding between Plaintiff and any of the other parties mentioned.  Plaintiff's judicial admissions to the facts within this paragraph do not establish a conspiracy; a conspiracy can only be inferred.  Cf. Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 164 (3d Cir. 2001) (discriminatory animus expressed by one member of an alleged conspiracy does not, by itself, permit a finding of discriminatory animus by all alleged members of the conspiracy.).

Given the summary judgment standard this Court must apply, Defendants, as the moving party, have failed to demonstrate the absence of genuine issues of material fact as to the existence of a conspiracy.  As such, Defendants' motion will be denied, and the issue left to the finder of fact.

### 4.  Defendants' Motion for Summary Judgment on the Merits of Plaintiff's Claims is Denied

Additionally, Defendants assert they are entitled to summary judgment in their favor on all causes of action alleged in Plaintiff's Complaint.  The Court, however, finds there exist genuine issues of material fact in the record.  Accordingly summary judgment in favor of Defendants is inappropriate.

In support of their arguments for summary judgment on the merits of Plaintiff's claims Defendants' repeatedly point to the fact that this Court previously denied Plaintiff's request for a temporary restraining order ("TRO"), holding that it was unlikely Plaintiff would be able to

succeed on the merits.[6]  (Defs.' Reply at 2-8.)  However, Defendants confuse the applicable

standards guiding this Court's decision in two entirely different contexts.  Compare Anderson,

477 U.S. at 255 (At the summary judgment stage, "the evidence of the non-movant *is to be*

*believed*, and all justifiable inferences are to be drawn in his favor.") (emphasis added); with

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a

preliminary injunction *must establish* that he is likely to succeed on the merits, that he is likely to

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

favor, and that an injunction is in the public interest.) (emphasis added).

Though the Plaintiff did not meet the "particularly heavy" burden[7] necessary to secure a

preliminary injunction, the evidence presented at such a hearing remains a part of the record

before the court.  See Fed. R. Civ. P. 65(a)(2) ("Even when consolidation is not ordered,

evidence that is received on the motion [for preliminary injunction] and that would be admissible

at trial becomes part of the trial record and need not be repeated at trial.").  The Court's factual

and legal findings made at the hearing, however, are not necessarily controlling on the remainder

of the case.  See New Jersey Hosp. Ass'n v. Waldman, 73 F.3d 509, 519 (3d Cir. 1995) ("Pending

the district court's final decision on the merits, the findings of fact and conclusions of law made

in conjunction with the preliminary injunction are indeed preliminary."); see also Vazquez v.

---

[6]   Defendants' Reply in Support of their Motion for Summary Judgment (Dk. at 60) makes this point clear.  For
example, in addressing the Plaintiff's cause of action for Trespass, Defendants' Reply Brief states only,

> When this Court found 'that Plaintiff's trespass argument is unlikely to succeed,' 'the facts at hand
> support[ed] a conclusion that the mulched area is a public forum, and not private property.' Because no
> additional or new facts are 'at hand' or anywhere in the record in this case with respect to the trespass claim,
> the claim must be dismissed and summary judgment granted."

(Defs.' Reply at 2.)  The Reply Brief echoes an identical argument as to each of Plaintiff's causes of action.

[7]   Trinity Indus., Inc. v. Chicago Bridge & Iron Co., 735 F.3d 131, 139 (3d Cir. 2013) (quoting Punnett v. Carter,
621 F.2d 578, 582 (3d Cir.1980)).

Carver, 1987 WL 14847 at * 14 (E.D. Pa. July 27, 1987) (In deciding to grant or deny a preliminary injunction a "court's findings of fact are tentative in nature, and are not binding on the court in the ultimate trial on the merits.") aff'd, 845 F.2d 1019 (3d Cir. 1988).

In order to be granted summary judgment, the Defendants must be able to prove "that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  However, Defendants' Motion for Summary Judgment fails to demonstrate an absence of record evidence to support Plaintiff's claims.  To the contrary, Defendants have repeatedly pointed the Court to record evidence showing the existence of disputed material facts. [8]

It would appear that very little discovery has been conducted in this matter.  The factual record, therefore, is substantially the same as it was when the TRO hearing was held on September 22, 2011.  Thus, rather than conducting additional discovery, Defendants' motion and reply instead relies solely upon the record established at the TRO hearing and the Court's October 24, 2011 Memorandum Opinion denying a TRO and permanent injunction.  (Defs.' Reply at 2-8.)  At the TRO hearing both Plaintiff and Defendant presented conflicting testimony and evidence as to each of Plaintiff's claims.  That evidence, while insufficient to carry Plaintiff's "heavy burden" at the preliminary injunction phase, is nonetheless sufficient to survive summary judgment.  See Fed. R. Civ. P. 65(a)(2).  The Court's October 24, 2011 Opinion did not resolve any factual disputes presented to the Court at the TRO hearing.  The Court's denial of Plaintiff's TRO request shows only that Plaintiff had not established a likelihood of success on the merits given that record evidence.  See Natural Res. Def. Council, 555 U.S. at 20.

---

[8]  Defendants' reply brief includes arguments such as "Plaintiff cites only to the TRO transcript in support of its Section 1983 claim and therefore judgment must be granted in Defendants' favor for the reasons this Court set forth in its October 4, 2011 opinion." (Defs.' Reply at 3-4.)  In the span of a single sentence, Defendants directs the Court to sworn testimony of record that creates a contested issue of material fact, then completely ignores that testimony simply because the Court denied Plaintiff's request for a TRO.

19

Defendants, in relying upon the TRO record, have directed the Court to numerous genuine issues of material fact for all of Plaintiff's claims.  Because Defendants have failed to show the absence of genuine factual issues, they have failed to carry their burden under Fed. R. Civ P. 56(c)(1) and summary judgment is inappropriate.  Celotex, 477 U.S. at 325.  Though the Court continues to possess the same doubts about the merits of Plaintiff's claims it expressed in its October 24, 2011 Memorandum Opinion, in ruling on a motion for summary judgment, it is not for a court to weigh the conflicting factual evidence presented by the parties.  Jiminez, 503 F.3d at 253.  Accordingly, Defendants' Motion for Summary Judgment will be denied.

### III.   CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's Motion for Leave to File an Answer to Defendants' Counterclaim.  The Court will also deny the parties' cross-motions for summary judgment in their entirety.

An appropriate order follows.